UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NUTRIMOST DOCTORS, LLC,

    Plaintiff,                                               Civil Action No. 16-CV-13844

vs.                                                     HON. BERNARD A. FRIEDMAN

ZANE STERLING, D.C., et al.,

    Defendants.
_____/

## **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART NUTRIMOST'S AND WISNIEWSKI'S MOTIONS TO DISMISS**

This matter is presently before the Court on (1) the motion of counter-defendant Nutrimost Doctors, LLC ("Nutrimost") for partial dismissal of the counter-complaint filed by Olafsson, et al., and for a more definite statement [docket entry 48]; (2) Nutrimost's motion for partial dismissal of the counterclaim filed by Idaho Fat Loss Twin Falls, LLC, et al. [docket entry 49]; (3) the motion of third-party defendants Nutrimost and Wisniewski to dismiss the third-party complaint filed by Olafsson, et al. [docket entry 57]; and (4) the motion of third-party defendant Wisniewski to dismiss the third-party complaint filed by Idaho Fat Loss Twin Falls, LLC, et al. [docket entry 58]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.

*Background*

This is a case of franchise agreements gone sour. The franchisor is Nutrimost. According to its website, the "The Nutrimost Wellness and Weight Loss Program is a nutritional program designed to help you identify the foods and supplements that will overcome the nutritional deficiencies that are present in your body." http://www.nutrimost.com. The company sells

franchises to various heathcare providers, including chiropractors, who pursuant to a franchise agreement are provided with, and agree to sell, certain "proprietary Nutrimost supplements" as part of the Nutrimost Weight Loss System.

The defendants are three chiropractors and their eleven companies: Dr. Zane Sterling, D.C., who resides in Boise, Idaho, and his four companies, all of which operate in Boise (Idaho Fat Loss Twin Falls, LLC; Idaho Fat Loss Idaho Falls, LLC; Idaho Fat Loss, Inc.; and Sterling Clinics, LLC); Dr. Joel Feeman, D.C., who resides in Fort Wayne, Indiana, and his five companies, which operate in three different locations in Ohio and Fort Wayne (Complete Health & Wellness, LLC; Customized Health & Wellness, LLC; Doctors Health & Wellness, LLC; New Life Chiropractic Center, Inc.; and New Life Health & Wellness Southwest, LLC); and Dr. Jason Olafsson, D.C., who resides in Oxford, Michigan, and his two companies, which operate in Lake Orion and Clarkson, Michigan (Custom Fat Loss, Inc.; and Custom Chiropractic and Wellness, Inc.). Plaintiff has franchise agreements (all of which are identical except for the service areas and monthly royalties each defendant must pay) with each of these companies. Each franchise agreement allows the franchisee to operate in one or more specified ZIP codes and requires the franchisee to pay monthly royalties.

Plaintiff alleges that in early 2016 defendants Sterling, Feeman, and Olafsson sent "contaminated" samples of the Nutrimost supplements to a laboratory in Ann Arbor, Michigan (Avomeen Analytical Services) for testing.[1] This laboratory reported that the samples contained

---

[1] Sterling's attorney wrote in a January 26, 2016, letter to plaintiff (Am. Compl. Ex. V) that Sterling had this testing done "due to reports from several patients regarding vivid dreams, dry mouth and other symptoms that he, based upon his own medical background and that of several family members, recognized to be signs of potential drug addiction and/or dependency." The other defense attorneys' letters do not indicate what prompted defendants to submit the

three banned weight-loss chemicals – Fenproporex, Aminorex, and Fluoxetine. Defendants then had their lawyers send letters to plaintiff, along with copies of the lab reports, declaring the franchise agreements to be void on the grounds that the Nutrimost supplements contained banned substances. Plaintiff then had a different laboratory test the same supplement lots, as well as lots preceding and following the lots defendants tested, and these tests allegedly detected no contamination. Plaintiff alleges that defendants deliberately contaminated the samples they provided to Avomeen to fabricate a way of escaping from their obligations under the franchise agreement.

Based on what plaintiff calls defendants' "Contaminated Supplement Scheme," the amended complaint asserts claims against all defendants for fraud, breach of contract, civil RICO, civil conspiracy, and violations of the Pennsylvania Uniform Trade Secrets Act. The Court has subject matter jurisdiction based on the RICO claim and diversity of citizenship. Plaintiff, which claims that more than $75,000 is in controversy, resides in Pennsylvania, and the defendants reside in Idaho, Michigan, Ohio, and Indiana.

After the Court denied defendants' motions to dismiss, defendants Olafsson and Feeman and their companies filed a counter-complaint [docket entry 40] against Nutrimost and a third-party complaint [docket entry 42] against Nutrimost and its principal, Ray Wisniewski. These counter-plaintiffs assert claims for breach of contract (Count I) and fraud and/or misrepresentation (Count II) based on allegations that Nutrimost provided them with contaminated and discolored supplements and exaggerated and otherwise misrepresented the supplements' qualities. In Count III, these counter-plaintiffs claim that Nutrimost defamed them by questioning their honesty at a meeting of franchisees and licensees, and in Count IV Olafsson and Feeman claim that Nutrimost

---

supplements for testing.

invaded the privacy of their children by using their images without permission. In their third-party complaint, Olafsson, Feeman, and their companies allege that Nutrimost and Wisniewski committed fraud and/or misrepresentation (Count I) by overstating the supplements' qualities, and that Nutrimost and Wisniewski defamed them (Count II) by questioning their honesty and falsely suggesting that they contaminated the product samples they sent for testing.

Additionally, Sterling's four companies filed a "counterclaim and third-party complaint" [docket entry 44, Pg ID 1573-1613] against Nutrimost for declaratory judgment, breach of contract, breach of covenant of good faith and fair dealing, rescission, disgorgement of profits, breach of implied warranty, and breach of fiduciary duties (Counts I, II, III, VIII, IX, XI, and XII), against Wisniewski for indemnification and contribution (Counts VI and VII), and against Nutrimost and Wisniewski for fraud, negligent misrepresentation, and tortious interference with business relationships (Counts IV, V, and X).

In the motions now before the Court, Nutrimost seeks dismissal of Counts II-IV of the Olafsson/Feeman counter-complaint and a more definite statement as to Count I [docket entry 48]. Nutrimost also seeks dismissal of all claims asserted against it in the Sterling companies' counterclaim except Counts I and II [docket entry 49]. Nutrimost and Wisniewski seek dismissal of the Olafsson/Feeman third-party complaint [docket entry 57]. And Wisniewski seeks dismissal of the Sterling companies' third-party complaint [docket entry 58].

***Legal Standard***

> The legal standard governing these motions is well known:
>
> In order to defeat a motion to dismiss, a plaintiff must "allege[ ] facts that 'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.'" *Handy-Clay v. City of Memphis*, 695 F.3d 531,

> 538 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In reviewing a complaint, we construe it "in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

*Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017). Other legal standards, as they relate to specific claims and arguments, are noted in the discussion below.

*Discussion*

### A. Nutrimost's Motion to Dismiss the Olafsson/Feeman Counter-Complaint [Docket Entry 48]

In this motion, Nutrimost seeks dismissal of Counts II (fraud and/or negligent and innocent misrepresentation), III (defamation), and IV (invasion of privacy) of the Olafsson/Feeman counter-complaint and a more definite statement as to Count I (breach of contract).

Nutrimost first argues that Count II should be dismissed because it is barred by the "gist of the action" doctrine, a term of art under Pennsylvania law[2] that can prevent a party from suing in tort when the parties' relationship is governed by contract. As summarized by the Pennsylvania Supreme Court, the essence of the doctrine is that

> [i]f the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

---

[2] The parties agree – but for different reasons – that the Court should apply Pennsylvania law in resolving this motion as it relates to Count II.

5

*Bruno v. Erie Ins. Co.*, 630 Pa. 79, 112, 106 A.3d 48, 68 (2014) (citations omitted).  Nutrimost argues that its relationship with the counter-plaintiffs is governed by contract and that Count II does not allege a "broader social duty" that could support a claim for fraud or misrepresentation.

The Court rejects this argument because the fraud/misrepresentation alleged in Count II occurred before the parties entered into the franchise agreements.  Counter-plaintiffs allege that Nurtrimost fraudulently induced them to enter into those agreements by misrepresenting the qualities of the Nutrimost supplements.  The "gist of the action" doctrine does not bar a claim of fraudulent inducement because the gist of such a claim relates to the circumstances that led the complaining party to enter into the contract, not the defending party's alleged failure to perform as required by the contract.  *See Sullivan v. Chartwell Inv. Partners, LP*, 2005 PA Super 124, ¶ 25, 873 A.2d 710, 719 (2005).

Nutrimost next argues that Count II fails because the allegedly fraudulent statements about the supplements' qualities were not material representations of fact, but merely opinions and "puffery."  Nutrimost cites authority for the proposition that one "may 'puff' or give subjective opinions . . . without making a material misrepresentation if the representations necessarily involve individual judgement such that, even though made absolutely, the hearer must know that they can be based only on the speaker's opinion."  *Fishkin v. TABFG, LLC*, 2006 WL 1517397, at *8 (E.D. Pa. May 31, 2006) (quoting *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 752 F. Supp. 181, 190 (E.D. Pa. 1990)).

While this is certainly a correct statement of the law, the Court is not persuaded that it justifies dismissing the fraud/misrepresentation claim in the present case.  Counter-plaintiffs allege more than opinions and puffery.  Among other things, Nutrimost claimed that it "guaranteed" its

6

program would result in a weight loss of at least 25 pounds in 40 days; that the program was based on "revolutionary breakthrough technology"; and that specifically pictured individuals had lost specific numbers of pounds "in only 40 days." Olafsson/Feeman Counter-Complaint ¶ 24 and Exs. 6-8. Such statements are more in the nature of "specific and measurable" claims, which take them outside the realm of opinions and puffery. *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993). Count II cannot be dismissed on this basis.

Regarding the defamation claim (Count III), Nurtimost seeks dismissal on the grounds that the allegedly defamatory statement was privileged under Pennsylvania law.[3] The "judicial privilege" at issue has been summarized by the Pennsylvania Supreme Court as follows:

> Pursuant to the judicial privilege, statements made in pleadings, as well as in the actual trial or argument of a case, are absolutely privileged, and the maker of the statements is immune from legal action as long as the statements are issued in the regular course of judicial proceedings and are pertinent and material to the redress or relief sought. *Post v. Mendel*, 510 Pa. 213, 507 A.2d 351, 353, 355 (1986). The judicial privilege also extends to statements made prior to judicial proceedings, provided that they are pertinent and material to, and issued in the regular course of preparing for, contemplated judicial proceedings. *Id*. at 356.

*Pollina v. Disong*, 2014 PA Super 153, 98 A.3d 613, 618–19 (2014). And in *Post*, the court explained:

> Thus, the privilege exists because there is a realm of communication essential to the exploration of legal claims that would be hindered were there not the protection afforded by the privilege. The essential realm of protected communication is not, however, without bounds.

---

[3] Nutrimost argues that Pennsylvania law applies because that is where the allegedly defamatory statements were made. Counter-plaintiffs argue that the law of Indiana and Michigan applies because they reside in those states and suffered the harm there. The Court need not resolve the issue at this time because Nutrimost's argument fails under the Pennsylvania law it cites.

7

> Rather, the protected realm has traditionally been regarded as composed only of those communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought. *Kemper*, 219 Pa. at 93, 67 A. at 994-95; *Greenberg*, 427 Pa. at 515, 235 A.2d at 578; *Barto v. Felix*, 250 Pa. Super. 262, 378 A.2d 927 (1977), appeal dismissed, 487 Pa. 455, 409 A.2d 857 (1980) (although statements in briefs are privileged, counsel's reiteration of the contents of his brief at a press conference held not privileged because the remarks were not made at a judicial proceeding).

510 Pa. at 221, 507 A.2d at 355.

From the limited information contained in the counter-complaint, which is all the Court may consider in deciding the instant motion, it is not possible for the Court to determine precisely what was said or whether the allegedly defamatory statements bore a close enough relationship to this lawsuit to entitle the speaker to assert the judicial privilege. In particular, it is not possible for the Court to determine at this time whether Nutrimost's statements were "pertinent and material to, and issued in the regular course of preparing for, contemplated judicial proceedings." *Pollina*, *supra.* If it deems this argument to be supported by the facts, Nutrimost may raise this issue again after the parties have had an opportunity to conduct discovery. However, the Court shall not dismiss the defamation claim on this basis at this time.

Nutrimost next seeks dismissal of counter-plaintiffs' claim for invasion of privacy (Count IV). This claim is based on the allegations that "Dr. Feeman and Dr. Olafsson refused Defendant's request and made clear it did not have authority to use images of their families. Despite the clear refusal, Counter Defendant used the images of Dr. Feeman's and Dr. Olafsson's family for its own business purposes, without having obtained consent." Counter-Compl. ¶¶ 46-47. Nutrimost seeks dismissal of this claim, which it construes as claiming appropriation of likeness, on the grounds that counter-plaintiffs have "failed to plead any facts demonstrating the value of the

8

likenesses which were allegedly appropriated." Nutrimost Br. at 14.

Counter-plaintiffs indicate that their invasion of privacy claim is both an "appropriation of likeness" claim and also a "right of publicity" claim. The former applies when a defendant "'appropriates to his own use or benefit the name or likeness of another.'" *Rose v. Triple Crown Nutrition, Inc.*, 2007 WL 707348, at *2 (M.D. Pa. Mar. 2, 2007) (quoting Restatement (Second) of Torts § 652C). The latter applies when a defendant uses plaintiff's name or likeness for "'commercial advantage.'" *Rose*, 2007 WL 707348, at *3 (quoting *World Wrestling Federation Entm't Inc. v. Big Dog Holdings, Inc.*, 280 F. Supp. 2d 413, 443–44 (W.D. Pa. 2003)). "In other words, the invasion of privacy by appropriation of name or likeness is a personal right created to protect one's privacy, while the right of publicity more closely resembles a property right created to protect commercial value." *Rose*, 2007 WL 707348, at *3.

Under either theory of liability, Nutrimost has not demonstrated that counter-plaintiffs must "plead . . . facts demonstrating the value of the likenesses which were allegedly appropriated." While the "value of the likenesses" may be relevant to measuring damages, this is not an element of either an appropriation of likeness claim or a right of publicity claim. The Court shall allow this claim to proceed.

Finally, Nutrimost seeks a more definite statement as to counter-plaintiffs' breach of contract claim (Count I). Nutrimost argues that "Count I . . . is vague, ambiguous, and defective because it fails to identify the specific terms of the contract which were allegedly breached . . . with respect to the alleged presence of 'banned substances' and/or the recall of product due to discoloration." Nutrimost Br. at 15.

Under Fed. R. Civ. P. 12(e), the Court may order a more definite statement if the

pleading in question "is so vague or ambiguous that the [defending] party cannot reasonably prepare a response." However, as Chief Judge Carr has commented,

> [a] motion for a more definite statement should not be used as a substitute for discovery. Accordingly, a motion for more definite statement is designed to strike at unintelligibility rather than simple want of detail. [It] must be denied where the subject complaint is not so vague or ambiguous as to make it unreasonable to use pretrial devices to fill any possible gaps in detail.

*Fed. Ins. Co. v. Webne*, 513 F. Supp. 2d 921, 924 (N.D. Ohio 2007) (citations omitted). In the present case, this "unintelligibility" standard is not met. The counter-complaint fully satisfies the notice pleading standards of Fed. R. Civ. P. 8(a) and *Twombly*. Nutrimost is free to inquire into the details of counter-plaintiffs' breach of contract claim in discovery. Its motion for a more definite statement is denied.

### B. Nutrimost's Motion to Dismiss the Sterling Companies' Counterclaim
### [Docket Entry 49]

In this motion, Nutrimost seeks dismissal of the following claims asserted against it by the Sterling companies in their counterclaim: Count III (breach of covenant of good faith and fair dealing), IV (fraud), V (negligent misrepresentation), VIII (rescission), IX (disgorgement of profits), X (tortious interference with business relationships), XI (breach of implied warranty), and XII (breach of fiduciary duties).

Nutrimost first argues that the fraud and misrepresentation claims (Counts IV and V) are barred by the "gist of the action" doctrine and are impermissibly based on "opinions and puffery." The Court has discussed and rejected these argument *supra*, and rejects them as they relate to the Sterling companies' fraud and misrepresentation claims for the same reasons.

Nutrimost next argues that the tortious interference claim (Count X) is inadequately

10

pled. This claim is based on the allegations that "NutriMost and/or Wisniewski did contact the Sterling Entities' clients before and/or after the termination of the business relationship between the Sterling Entities and NutriMost [and] . . . tortiously defamed, denigrated, and/or slandered the Sterling Entities, and interfered with the business relationships between the Sterling Entities and their clients." Sterling Companies' Counterclaim ¶¶ 138-39. Nutrimost argues that "counterclaimants fail to set forth, with any specificity, the alleged acts of Nutrimost which they assert 'defamed, denigrated, and/or slandered the Sterling Entities' constituting interference with the Sterling Entities' business relationship." Nutrimost Br. at 10.

Whether Pennsylvania law applies (as Nutrimost contends) or Idaho law applies (as the Sterling companies contend), the tortious interference claim is adequately pled. Under Pennsylvania law, the elements of this claim are

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Trivedi v. Slawecki*, 2012 WL 3011718, at *4 (M.D. Pa. July 23, 2012). Under Idaho law, a claim for tortious interference is established if plaintiff shows that defendant wrongfully and intentionally interfered with a business relationship. *See Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 285, 824 P.2d 841, 860 (1991). In either case, the claim is sufficiently alleged in the present case, and Nutrimost's motion to dismiss this claim is denied. Nutrimost is free to inquire into the details of this claim in discovery.

Nutrimost next argues that the counter-plaintiffs' claim for breach of the covenant

11

of good faith and fair dealing (Count III) should be dismissed because it is duplicative of their breach of contract claim.[4] The Court agrees. Under Pennsylvania law, which plainly applies under the choice-of-law clause in the franchise agreement,[5] no independent cause of action for "breach of the covenant of good faith and fair dealing" is recognized. As the Superior Court of Pennsylvania has explained,

> a breach of the covenant of good faith and fair dealing is a breach of contract action, not an independent action for breach of a duty of

---

[4] This claim is based on the following allegations:

> 87. Implied in the Franchise Agreements . . . was a covenant of good faith and fair dealing.
>
> 88. By the conduct alleged herein, including but not limited to NutriMost's misrepresentations relating to the quality and ingredients in the NutriMost products and the goodwill of the NutriMost brand name, NutriMost breached and violated its obligations of good faith and fair dealing to the Sterling Entities.
>
> 89. The misrepresentations and wrongful and/or fraudulent conduct of NutriMost, as alleged herein, violated, nullified, and significantly impaired the Sterling Entities' rights under the Franchise Agreements, thereby breaching the implied covenant of good faith and fair dealing.

[5] Section 26 of the franchise agreement states:

> This Franchise Agreement and the construction thereof shall be governed by the laws of the Commonwealth of Pennsylvania. All legal proceedings arising out of or relating to this Agreement shall be conducted in the Court of Common Pleas of Allegheny County, Pennsylvania, or the United States District Court for the Western District of Pennsylvania.

Am. Compl. Ex. A. As the covenant of good faith and fair dealing allegedly is "[i]mplied in the Franchise Agreements between NutriMost and the Sterling Entities," Counterclaim ¶ 87, the choice-of-law clause applies to Count III.

> good faith. *LSI Title Agency, Inc. v. Evaluation Servs.*, 951 A.2d 384, 391 (Pa. Super. 2008). The implied covenant of good faith and fair dealing attaches to existing contractual obligations; it does not add new contractual duties. In essence, the duty to act in good faith and deal fairly infuses the parties' performance of their express contractual obligations. In determining whether there has been a breach of contract, we evaluate the conduct of a party through the lens of good faith and fair dealing.

*Hanaway v. Parkesburg Grp., LP*, 2015 PA Super 263, 132 A.3d 461, 471-72 (2015) (footnote omitted), *rev'd in part on other grounds*, 168 A.3d 146 (Pa. 2017). *See also McHale v. NuEnergy Grp.*, 2002 WL 321797, at *8 (E.D. Pa. Feb. 27, 2002) ("Plaintiffs' claim for breach of the covenant of good faith and fair dealing must be dismissed. . . . A breach of such covenant is a breach of contract action, not an independent action for breach of a duty of good faith and fair dealing.").

The Sterling companies are free to attempt to prove their breach of contract claim with evidence that Nutrimost breached the implied covenant of good faith and fair dealing. However, such evidence would not support an independent cause of action for "breach of the covenant of good faith and fair dealing" separate from their breach of contract claim. Accordingly, the Court shall grant Nutrimost's motion to dismiss Count III.

Nutrimost next seeks dismissal of the Sterling companies' claim for breach of fiduciary duties (Count XII).[6] Nutrimost argues that this claim is untenable because no fiduciary

---

[6] This claim is based on the following allegations:

> 152. The Sterling Entities' trust, confidence and dependence upon NutriMost to deliver high quality products, free of contamination with illegal, restricted and/or banned substances, was justified based upon the Franchise Agreements, the course of dealings between the parties, and NutriMost's own insistence on maintaining control and secrecy of the NutriMost Program.
>
> 153. As a result of the unequal terms of the business relationship,

13

relationship ever existed between the parties. The Court agrees. In Pennsylvania,[7]

> the established case law simply does not support the existence of any fiduciary duty between a franchisor and its franchisees. *See AAMCO Transmissions, Inc. v. Harris*, 759 F.Supp. 1141, 1147 (E.D. Pa. 1991) (dismissing counterclaim as "a franchise relationship is not fiduciary in nature"); *Bishop*, 403 F.Supp.2d 411 (observing that the "significant weight of authority holds that franchise agreements do not give rise to fiduciary . . . relationships between the parties") (citations omitted).

*GNC Franchising, Inc. v. O'Brien*, 443 F. Supp. 2d 737, 755 (W.D. Pa. 2006). Simply put, the franchisors and franchisees stand in a business relationship with each other, not a fiduciary relationship. The Court shall therefore grant Nutrimost's motion to dismiss Count XII.

Nutrimost next seeks dismissal of the Sterling companies' claim for breach of implied warranty of merchantability and fitness for a particular purpose (Count XI).[8] Nutrimost argues that

---

> NutriMost had a fiduciary duty to the Sterling Entities to not provide substances for the Sterling Entities to sell to their clients that were contaminated with illegal . . . substances, and to ensure that the products that NutriMost required the Sterling Entities to sell to their clients for consumption were free of any and all such illegal . . . substances, so as to protect the Sterling Entities from potential civil liability to clients and criminal prosecution . . .

[7] While the Sterling companies argue that Idaho law applies, the choice-of-law provision plainly requires application of Pennsylvania law to Count XII, as the alleged fiduciary relationship arose from the franchise agreement. *See* n.5, *supra*.

[8] This claim is based on the following allegations:

> 144. At all times relevant hereto, there was an implied warranty of merchantability in the sale from NutriMost to the Sterling Entities that the NutriMost Weight Loss Formula was: (a) Passable without objection under the terms of the Franchise Agreements; (b) Of fair average quality; (c) Fit for the ordinary purposes for which it was intended to be used; (d) Of even kind, quality and quantity within each unit and among all units; (e) Adequately contained, packaged, and labeled; (f) In conformance with the promises or affirmations of fact made on the container and/or label.

this claim is insufficiently pled because "the counterclaim fails to set forth any alleged manifestation of the asserted defect in the product or resulting harm." Nutrimost Br. at 15. The Court rejects this argument because the defect in the product in the present case has been sufficiently "manifested" by the alleged discovery, upon laboratory testing, of Fenproporex, Aminorex, and Fluoxetine mixed in with the dietary formula. Count XI may proceed.

Nutrimost next argues for dismissal of the Sterling companies' Count VIII, which seeks "a judicial rescission of their Franchise Agreements" due to Nutrimost's "unlawful and fraudulent representations," i.e., misrepresenting the characteristics and ingredients of the dietary formula and "represent[ing] to the Sterling Entities that the NutriMost brand name had a higher approval and status with the U.S. Better Business Bureau than it actually did." Counterclaim ¶¶ 117-18, 123. Nutrimost argues that "the rescission remedy is not available to the Sterling Defendants in this matter because they failed to act promptly on their potential claim for rescission as required by Pennsylvania law." Nutrimost Br. at 16. In response, the Sterling companies argue that their right to seek rescission is preserved because they promptly notified Nutrimost upon

---

> 145. NutriMost breached its implied warranty of merchantability, as the NutriMost Weight Loss Formula was [none of (a) through (f)] . . . given the presence of illegal, restricted and/or banned substances in some, if not all, of the NutriMost Weight Loss Formula sold by NutriMost.
>
> 146. At all times relevant hereto, NutriMost knew that the particular purpose for which the NutriMost Weight Loss Formula was sold was for human consumption . . .
>
> \* \* \*
>
> 149. NutriMost materially breached its implied warranties . . . by knowingly or negligently selling products that contained substances that are illegal . . . .

discovery of the alleged contamination.

The Court shall deny Nutrimost's motion as to Count VIII for two reasons. First, Rule 12(b)(6) permits it to seek dismissal of a claim. Rescission is not a claim, but a remedy, a fact recognized by Nutrimost and the cases it cites at page 16 of its brief. Second, the case block-quoted by Nutrimost requires the party seeking rescission "to notify the other party without delay." *Fichera v. Gording*, 424 Pa. 404, 406, 227 A.2d 642, 644 (1967). In the present case, it appears that the Sterling companies did so. *See* Am. Compl. ¶ 80 (acknowledging that Sterling's attorney's January 26, 2016, letter declaring the franchise agreements to be void was purportedly based on the Avomeen lab report dated January 7, 2016). In any event, the Sterling companies' entitlement, if any, to rescission is not properly challenged in a motion to dismiss.

Finally, Nutrimost requests dismissal of Count IX, in which the Sterling companies seek "disgorgement of profits that NutriMost earned as a result of its unlawful and fraudulent conduct." Counterclaim ¶ 134. The allegedly unlawful and fraudulent conduct is the same as that alleged in the rescission count. *See id.* ¶¶ 117-18, 128-29. Nutrimost argues that "the counterclaim fails to set forth any facts establishing the Sterling Entities' entitlement to any alleged profits wrongfully earned by Nutrimost." Nutrimost Br. at 18. The Court shall deny the motion as to this count because, as with rescission, disgorgement of profits is a remedy, not a claim, as Nutrimost notes on pages 17-18 of its brief. Rule 12(b)(6) tests whether claims have been sufficiently pled, not whether any particular remedies are available. The pleading stage is not the appropriate time for the Court to make rulings on the amount or type of damages or other relief which may be available in the event the Sterling companies prevail on any of their claims.

### C. Nutrimost's and Wisniewski's Motion to Dismiss the Olafsson Third-Party Complaint [Docket Entry 57]

In this motion, Nutrimost and Wisniewski seek dismissal of the claims asserted against them in the third-party complaint filed by Olafsson, Feeman, and their companies. As noted above, this third-party complaint alleges that Nutrimost and Wisniewski committed fraud and/or misrepresentation (Count I) by overstating the supplements' qualities, and that Nutrimost and Wisniewski defamed them (Count II) by questioning their honesty and falsely suggesting that they contaminated the product samples they sent for testing.

Nutrimost and Wisniewski first argue that the Court lacks personal jurisdiction over them and that the third-party complaint should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). The Court shall not dismiss the third-party complaint on this basis. Nutrimost submitted to the Court's jurisdiction by acquiescing in Judge Hornak's order transferring its complaint to this Court. Nutrimost did not seek reconsideration of that transfer order, nor has it filed a motion in this Court to transfer the matter elsewhere. Moreover, since the case was transferred to this district, both Nutrimost and Wisniewski have actively participated in the litigation by having counsel enter general appearances, opposing defendants' motions to dismiss, and filing various motions seeking dismissal on the merits of the various counterclaims and third-party claims filed against them. The filing of general appearances alone "constituted a voluntary acceptance" of this Court's jurisdiction. *Gerber v. Riordan*, 649 F.3d 514, 520 (6th Cir. 2011). Nutrimost's and Wisniewski's active participation in the litigation has further cemented that acceptance.

Nutrimost and Wisniewski next seek dismissal of the Olafsson/Feeman third-party complaint under Fed. R. Civ. P. 12(b)(6) on the grounds that Count I is barred by the "gist of the action" doctrine and because their opinions about the supplements' qualities are not actionable. They seek dismissal of Count II on the grounds that the allegedly defamatory statements are covered

17

by the judicial privilege. The Court rejects these arguments for the reasons explained above.

### D. Wisniewski's Motion to Dismiss the Sterling Companies' Third-Party Complaint [Docket Entry 58]

In this motion, Wisniewski seeks dismissal of the claims asserted against him in the Sterling companies' "counterclaim and third-party complaint": Counts IV (fraud), V (negligent misrepresentation), VI (indemnification), VII (contribution), and X (tortious interference with business relationships).

Wisniewski first argues that the third-party complaint should be dismissed because the Court lacks personal jurisdiction over him. The Court rejects this argument for the reasons stated above. Counsel has entered a general appearance on Wisnewski's behalf, and this establishes his voluntary submission to the Court's jurisdiction. Wisniewski has also actively participated in litigating this matter by seeking dismissal (including in the instant motion) of the various claims asserted against him on the merits, not only for lack of personal jurisdiction.

Regarding the specific counts of the Sterling companies' third-party complaint, Wisniewski first argues that Counts IV and V should be dismissed under the "gist of the action" doctrine and because opinions and puffery and not actionable. The Court rejects these arguments for the reasons stated previously.

Finally, Wisniewski argues that Count X should be dismissed because it is inadequately pled. The Court rejects this argument for the reasons stated above. While the allegations in ¶¶ 138-40 are "bare bones," Wisniewski is free to inquire into the details of this claim in discovery.

*Conclusion*

For the reasons stated above,

IT IS ORDERED that Nutrimost's motion to dismiss the Olafsson/Feeman counter-complaint and for a more definite statement [docket entry 48] is denied.

IT IS FURTHER ORDERED that Nutrimost's motion to dismiss the Sterling companies' counterclaim [docket entry 49] is granted as to Counts III and XII but denied as to Counts IV, V, VIII, IX, X, and XI.

IT IS FURTHER ORDERED that Nutrimost's and Wisniewski's motion to dismiss the Olafsson third-party complaint [docket entry 57] is denied.

IT IS FURTHER ORDERED that Wisniewski's motion to dismiss the Sterling companies' third-party complaint [docket entry 58] is denied.

IT IS FURTHER ORDERED that the Sterling defendants' motion for an extension of time [docket entry 56] is denied as moot.

Dated: March 30, 2018           s/Bernard A. Friedman
Detroit, Michigan               BERNARD A. FRIEDMAN
                                       SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2018.

                                                s/Johnetta M. Curry-Williams
                                                Case Manager